UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-283-FDW

| | |
|---|---|
| JAMES A. MINYARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ERIK A HOOKS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 18), as well as on Plaintiff's Motion for Judgment, (Doc. No. 19). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 14).

**I.    BACKGROUND**

*Pro se* Plaintiff James A. Minyard, who is incarcerated at the Avery-Mitchell Correctional Institution, filed a civil rights suit pursuant to 42 U.S.C. § 1983. He was granted leave to file an Amended Complaint which is presently before the Court for screening. He names as Defendants: North Carolina Department of Public Safety ("DPS") Secretary Erik A. Hooks; DPS Deputy Secretary W. David Guice; DPS Western District Director David Mitchell; and Avery-Mitchell Correctional Institution Superintendent Carlos Hernandez in their individual and official capacities. (Doc. No. 18 at 2-3).

Construing the Amended Compliant liberally and accepting the allegations as true, Defendants began opening legal mail and taking parts of newspapers paid for by Plaintiff that presented no threat to prison, staff, or inmates, beginning on July 16, 2015, and continuing until

present. This was done outside of Federal law, State law, and Prison Policy. "All staff," including floor officers, unit managers, the Superintendent, the Director and Assistant Director of Western District Office, and Secretary Hooks "were all aware of this issue and did nothing to stop it." (Doc. No. 18 at 5).

Plaintiff seeks to "[h]old Defendants accountable" for knowingly violating Plaintiff's rights, the costs of this action, $672 for the newspapers Plaintiff was unable to read, and punitive damages.

**II. STANDARD OF REVIEW**

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519 (1972) (a pro se complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal

construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Parties**

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he

3

knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff has named all of the Defendants in their official and individual capacities. He alleges that violations occurred and that Defendants knew about them via grievances and letters. However, he does not allege that any of the Defendants deprived Plaintiff of his First Amendment rights through his own personal actions, so he has failed to state a claim against them in their individual capacities. Nor does Plaintiff allege that the incidents occurred as a result of the Defendants' customs or policies so there is no basis for Monell liability.

Plaintiff's allegations are, however, minimally sufficient to state supervisory liability. He alleges that he was repeatedly deprived of his newspaper and that legal mail was opened at the Avery-Mitchell C.I., that he informed Defendants about these incidents in grievances and letters, and that their failure to act allowed these incidents to continue for years. This claim is minimally sufficient to proceed against all the Defendants.

**(2)** **Free Speech**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Procunier v. Martinez, 416 U.S. 396, 412 (1974), *limited by*

Thornburgh v. Abbott, 490 U.S. 401 (1989); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

Plaintiff's conclusory allegations are insufficient to set forth a First Amendment violation. Prison officials have broad discretion to determine that materials inside a prison are contraband. See generally Sandin v. Connor, 515 U.S. 472, 485 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."). Plaintiff fails to allege that there was no rational connection between prison authorities' actions and a legitimate governmental interest, or that he lacked an alternative means of expressing himself. See e.g., Birdo v. Dunston, 2013 WL 2154819 (W.D.N.C. May 17, 2013) (dismissing prisoner's § 1983 claim because he failed to state a First Amendment violation with regards to white supremacist speech; he was free to engage in expression regarding political matters and beliefs so long as his speech did not contain threatening or inflammatory communications); Hughes v. City of Mariposa, 2011 WL 5118448 (E.D. Ca. Oct. 27, 2011) (dismissing prisoner's First Amendment claim that a jailer took a periodical away from him because he failed to allege there was no rational connection between the jail's policy and a legitimate governmental interest, or that he did not have any other means of exercising his right).

Plaintiff's vague and conclusory allegations are insufficient to set forth a First Amendment claim and it is therefore dismissed.

**(3)** **Access to Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present

5

claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

To the extent that Petitioner may be claiming that opening legal mail violated his right to access the courts, this claim is too vague and conclusory to proceed because he fails to allege that any nonfrivolous post-conviction or civil rights claim was impeded.

Therefore, any alleged violation of Plaintiff's access to the courts is insufficient to proceed.

**(4)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). The Parratt-Hudson doctrine is limited to cases involving "a random and

6

unauthorized act by a state employee, . . . not a result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). When the challenge is to an "established state procedure," or when the deprivation is inflicted by a state official who is empowered to work deprivations and provide process where it is predictable when those deprivations might occur, the availability of a post-deprivation judicial hearing normally does not satisfy procedural due process. Id.; Zinermon v. Burch, 494 U.S. 113 (1990). The Parratt-Hudson doctrine does not apply when a municipal officer acts pursuant to a municipal policy or custom. Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005); Matthias v. Bingley, 906 F.2d 1047 (5th Cir. 1990).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff alleges that Defendants knew about, and failed to prevent, prison workers from removing portions of Plaintiff's newspaper, and that his legal mail was also opened. It is unclear at this juncture whether or not these alleged incidents were random and unauthorized acts. Therefore, Plaintiff's due process claim will be permitted to proceed.

**(5)** **"Motion for Judgment"**

Plaintiff's pending "Motion for Judgment" is, in essence, a motion for summary judgment and is construed as such. Plaintiff has minimally stated free speech and due process claims. However, no Defendant has yet been served or has responded to the Amended Complaint. Thus, the motion for summary judgment is denied as premature.

7

## V. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff's free speech and due process claims survive initial screening by the Court in that they are not clearly frivolous, the remaining claims are dismissed, and Plaintiff's "Motion for Judgment" is denied.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's Amended Complaint, (Doc. No. 18), survives initial review on the claims of deprivations of free speech and due process but all other claims are dismissed pursuant to 28 U.S.C. § 1915(e)(ii).

2. Plaintiff's "Motion for Judgment," (Doc. No. 19), is construed as a motion for summary judgment and is **DENIED** without prejudice as premature.

3. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for **Defendants Hooks, Guice, Mitchell,** and **Hernandez** who are current or former employees of NC DPS.

Signed: April 23, 2018

Frank D. Whitney
Chief United States District Judge