| | | |
|---|---|---|
| JAMES A. MINYARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ERIK A. HOOKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————————— | ) | |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 60, 68).

## I.      BACKGROUND

The *pro se* incarcerated Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 with regards to incidents that allegedly occurred at the Avery-Mitchell Correctional Institution. The Amended Complaint passed initial review on claims of deprivation of free speech and due process. The parties' Motions for Summary Judgment are presently before the Court for consideration.

**(1)      Amended Complaint** (Doc. No. 19)

Plaintiff alleges that Defendants began opening legal mail and taking parts of newspapers paid for by Plaintiff that presented no threat to prison, staff, or inmates, beginning on July 16, 2015, and continuing until present. This was done outside of Federal law, State law, and Prison Policy. "All staff," including floor officers, unit managers, the Superintendent, the Director and Assistant Director of Western District Office, and Secretary Hooks "were all aware of this issue and did nothing to stop it." (Doc. No. 18 at 5). Plaintiff seeks to "[h]old Defendants accountable"

for knowingly violating Plaintiff's rights, the costs of this action, $672 for the newspapers Plaintiff was unable to read, and for punitive damages.

**(2)**    **<u>Defendants' Motion for Summary Judgment</u>** (Doc. No. 60)

Defendants argue that Plaintiff has not, and cannot, present evidence to permit a reasonable juror to find in his favor. Plaintiff's conclusory allegations complaining about the opening of his legal mail fail to allege that any such opening happened outside his presence and he fails to identify any specific staff, time frame, or the specific mail that was allegedly opened so his claim with regards to the opening of legal mail lacks merit. With regards to the confiscation of flyers that are added to newspapers, the restrictions on the flyers is rationally related to the legitimate governmental objective of maintaining facility security. The flyers are not covered in the price of the subscription, they constitute nuisance contraband, and inmates are allowed access to the remainder of the newspapers which fully accommodates inmates' right of access to the media and current events.

Plaintiff cannot proceed on claims against Defendants on the theories of *respondeat superior* or supervisory liability. Plaintiff fails to allege what specific actions Defendants were directly involved in at the time the deprivation occurred and, taking Plaintiff's allegations in the light most favorable to him, Defendants were not directly involved in any alleged deprivation of his newspapers or the opening of his legal mail. At most, they were notified by letters and grievances that Plaintiff filed. Taking the allegations in the light most favorable to the Plaintiff, he has failed to show that Defendants had knowledge of a pervasive and unreasonable risk of constitutional injury to Plaintiff. Nor is there an underlying constitutional violation without which he cannot establish a claim for supervisory liability.

Summary judgment should also be granted on Plaintiff's due process claims with regards

to the confiscation of his personal property. Because the alleged tampering with a newspaper involved one missing section, which was found, and that the incident was not intentional. With regards to the newspaper flyers, coupons and flyers are removed in the mailroom because they are nuisance contraband with space and security issues. Plaintiff has a meaningful post-deprivation remedy for conversion, and therefore, Plaintiff fails to state a federal claim. Plaintiff has failed to show a first amendment violation with regards to the flyers, and the restrictions are rationally related to a legitimate and neutral government objective so Defendants are entitled to summary judgment.

Plaintiff cannot recover money damages from Defendants in their official capacities because it is barred by sovereign immunity. Defendants are entitled to qualified immunity from any claims for monetary damages against them in their individual capacities because Plaintiff has failed to demonstrate a constitutional violation or show that Defendants acted intentionally in his deprivation.

**(3)** <u>**Plaintiff's Response**</u> (Doc. No. 67)[1]

Plaintiff argues that Defendants have failed to respond to his discovery requests, requests for admissions, or interrogatories and have shown "nothing but contempt for courts and Plaintiff in this action." (Doc. No. 67 at 2). He asserts that Defendants have no grounds for a summary judgment motion and "no evidence to prove it's filing," and that "evidence in courts possession and defendants actions would be enough to prove his case before a jury…." (Doc. No. 67 at 3). Plaintiff claims that Defendants have sent "junk papers that has nothing to do with discovery" and "alleged Affidavit by defendant Hernandez with no signature or notary stamp of DPS Policy."

---

[1] The Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the importance of responding to Defendant's Motion and the applicable legal standard. (Doc. No. 63).

(Doc. No. 67 at 3). He asks the Court to dismiss Defendants' Motion for Summary Judgment with prejudice. Plaintiff does not have "any problems with DPS Policy or it's rules." (Doc. No. 67 at 4). His problem "is with defendants not following Federal and state Law and prison policy and being in a supervisory over there subordinates not enforcing federal; state Law and DPS Policy." (Doc. No. 67 at 4).

**(4)      Plaintiff's Motion for Summary Judgment** (Doc. No. 68)

Plaintiff argues that he should be granted summary judgment because "Defendants have failed to respond and comply with Order by honorable Judge Whitney on April 24, 2019 (Doc. No. 48) on Motion to Compel." (Doc. No. 68 at 1). He claims that Defendants failed to respond to motions for admissions, interrogatories, and discovery under Rules 26, 33, 36, and 37 of the Federal Rules of Civil Procedure.

**(5)      Evidence**[2]

**(A)      Affidavit of Carlos A. Hernandez** (Doc. No. 62-1)

Defendant Hernandez is the Facility Administrator at Avery-Mitchell C.I., is familiar with the policies and procedures of NCDPS, and is trained and experienced in the management of inmates like Plaintiff. He has access to the Offender Population Unified System ("OPUS") as well as to NCDPS policies and procedures, Avery-Mitchell Standard Operating Procedures ("SOPs"), inmate grievances, and other inmate records maintained at Avery-Mitchell C.I.

Plaintiff was transferred to Avery-Mitchell C.I. from Mountain View C.I. on July 15, 2015, and he was transferred from Avery-Mitchell C.I. to Alexander C.I. on December 18, 2018. He is currently housed at Alexander C.I. with a projected release date of December 23, 2030.

NCDPS policy provides procedures for how offenders confined in prison facilities such as

---

[2] This section is not exhaustive.

Avery-Mitchell can receive and possess publications that includes newspapers. NCDPS publication policy provides that, prior to the distribution of a publication, initial screening is performed and then the publication is forwarded to the Warden/Superintendent or Deputy/Assistant Superintendent for the purpose of disapproving receipt or possession of a publication by an inmate. These searches are done in order to reduce and prevent the incidents of contraband, including weapons and drugs, which compromise the safety of the inmates and officers in the facility. The NCDPS publication policy is necessary to control security problems caused when contraband such as drugs, weapons, money, and tools that can be used to affect an escape are smuggled in books, magazines, and newspapers from unvetted sources or visitors. These searches are done in order to reduce and prevent the incidents of contraband, including drugs and weapons, which compromise the safety of the inmates and officers in the facility.

The Correctional Facility Administrator and the Facility Administrator's designee at Avery-Mitchell is responsible for developing and implementing a facility publication policy consistent with the NCDPS Publications Received/Possessed by Inmates policy. NCDPS policy provides procedures for how offenders confined in prison facilities such as Avery-Mitchell can be permitted to correspond with family, friends, officials, attorneys, and other significant government officials consistent with the safety and security needs of each facility. The purpose of this policy is to describe the procedures that will be used by NCDPS staff to process inmate correspondence and packages. Because mail involves communications with the public, outgoing and incoming mail presents a significant security risk. Mail presents a potential for inmates to receive or send contraband and to plan or engage in dangerous or criminal activities. Based on these significant security concerns, incoming and outgoing mail is monitored and can be opened and inspected to make sure that the inmates are complying with NCDPS policy. Inspections of mail are allowed

and serve to prevent the inmate from receiving or sending through the mail any materials that threaten to undermine the security and order of the facility, or mail that contains contraband or other material that cannot be lawfully sent through the mail. Personal mail is read, censored, or rejected based on legitimate institutional interests of order and security. Legal mail addressed to an inmate may be opened by correctional staff in the presence of the inmate unless waived in writing by the inmate or in circumstances that may indicate contamination. Correctional staff will ensure that the contents of letters from these persons are free of contraband and are, in fact, official or legal correspondence from the person whose name and return address appear on the outside of the envelope or package. The correspondence shall not be read beyond what is necessary to make this determination.

The Correctional Facility Administrator or Facility Administrator's designee at Avery-Mitchell is responsible for developing and implementing a facility mailroom policy consistent with NCDPS Inmate Use of the Mail policy. Officers at Avery-Mitchell receive large quantities of mail on a weekly basis for the 856 offenders housed there. It is estimated that thousands of pieces of mail are received on a weekly basis. All incoming mail is searched per policy and staff find contraband in the mail frequently consisting of items such as drugs, tobacco, Security Risk Group paraphernalia, cash, money orders, etc.

While reviewing Plaintiff's records in order to respond to his allegations, Defendant Hernandez reviewed grievances submitted by Plaintiff relating to staff tampering with his newspapers and removal of sections/contents of his newspapers. With regards to a missing section of newspaper, the Step 1 facility grievance investigator Mark Geouge noted that one section of Plaintiff's newspaper was missing and was found. It was noted that this was not intentional, and Plaintiff agreed with the Step 1 response. With regards to newspaper flyers and coupons, these

materials are not paid by the newspaper subscriber, but are added to the newspapers by the company that puts out such flyers. These flyers are "nuisance contraband in that they take up storage room in the dormitories and can be used in creating fires, which is a security issue." (Doc. No. 62-1 at 6). These flyers are removed in the mailroom "due to space issues." (Doc. No. 62-1 at 5).

Defendant Hernandez is not aware of any staff or correctional officers intentionally opening Plaintiff's mail other than what is consistent with NCDPS and Avery-Mitchell mail policies. Any allegation made by Plaintiff through the Administrative Remedy Procedure while he was confined at Avery-Mitchell was investigated at both the facility level and by the Inmate Grievance Resolution Board. "Any alleged violation of these NCDPS and Avery-Mitchell policies would have been inadvertent and unintentional by Avery-Mitchell mailroom staff." (Doc. No. 62-1 at 6).

Defendant Hernandez denies at he, at any time, violated Plaintiff's rights. To the best of his knowledge, Plaintiff's mail and newspapers were processed to the best of the ability of Avery-Mitchell mailroom staff. Defendant Hernandez is "not aware of anyone who violated Plaintiff's rights at any time." (Doc. No. 62-1 at 6). Based on his review of the relevant documents, records, and applicable policies and standard operation procedures, Defendant Hernandez concluded that "Avery-Mitchell staff acted in good faith and accordance with the NCDPS policy and procedures and Avery-Mitchell standard operating procedures described herein." (Doc. No. 62-1 at 6).

Defendant Hernandez's Affidavit is signed under oath and notarized. (Doc. No. 62-1 at 1, 6).

**(B)** **OPUS Offender Information Screen** (Doc. No. 62-1 at 8)

The OPUS Offender Information Screen for Plaintiff indicates that he is a medium custody

inmate. He was transferred to Avery-Mitchell C.I. on July 16, 2015 and was transferred to Alexander C.I. on December 18, 2018.

      **(C)**      **NCDPS Policy & Procedure** (Doc. No. 62-1 at 10)

The NCDPS Policy & Procedure addressing Publications Received/Possessed by Inmates states that inmates in medium or close custody "may receive a reasonable number of hard back and paperback books, newspapers, magazines, newsletters and vendor catalogs directly from the publisher…." (Doc. No. 62-1 at 10). The amount or volume of permitted materials which any inmate may maintain at any given time may be limited as necessary for security, sanitation and safety considerations, including the potential for blocking access to the cell and the creation of a fire hazard." (Id.). Threats to institutional safety and security include materials "from a source that is not a legitimate marketer or distributor of published material." (Doc. No. 62-1 at 18).

The Policy & Procedure addressing Inmate Use of the Mail provides that there is "no limit on the length, language, content, or source of mail for any inmate except when there is reasonable belief that limitation is necessary to protect public safety or institutional order and security." (Doc. No. 62-1 at 62). The Facility head may provide for the inspection of outgoing mail which "shall serve to prevent the inmate from receiving or sending through the mail any material that threatens to undermine the security and order of the facility or mail that contains contraband or other material which cannot be lawfully sent through the mail." (Doc. No. 62-1 at 65). Personal mail is "read, censored, or rejected based on legitimate institutional interests of order and security." (Doc. No. 62-1 at 65). Legal mail addressed to an inmate "may be opened by correctional staff in the presence of the inmate unless waived in writing by the inmate, or in circumstances which may indicate contamination…. The correspondence shall not be read beyond what is necessary to make [the] determination" that the mail is free from contraband and are, in fact, legal correspondence from

8

the person whose name and return address appears on the outside of the envelope or package."
(Id.). Further, "[a]dvertising 'junk' mail … [that is] NOT addressed to a specific individual shall be withheld." (Doc. No. 62-1 at 69).

**(D)    Time Line**

| | |
|---|---|
| 1/12/13 | Inmate Request Form to Sgt. Barnett: Plaintiff received a letter on 1/18/13 that was legal mail and should have been signed for and that staff opened outside Plaintiff' presence (Doc. No. 1-1 at 32) |
| 1/23/13 | Letter re Legal Mail from Sgt. Barnette to Plaintiff: in reference to Plaintiff's letter to Mr. Whitener, Barnette has looked into the matter and found that "unfortunately you are correct." The mail in question was legal and should have been treated as such. Barnette spoke to the staff member in question who opened the letter "based on the bed load written on the envelope." Hopefully there will be no more issues in future. (Doc. No. 1-1 at 31) |
| 2/25/13 | Step 1 Unit Response (4870-B-13-107) by Superintendent: "Documentation indicates that all legal mail is documented when outgoing and incoming. I find no evidence that procedure should be changed at this time." (Doc. No. 1-1 at 17) |
| 3/15/13 | Letter re Legal Mail from Keith Whitener to Plaintiff: claims related to the processing of legal mail have been previously investigated by Sergeant Barnette and in grievance 4870-B-13-107; the claim that Whitener did not respond to the letter is inaccurate; the response was by Sergeant Barnette on 1/23; Plaintiff is encouraged to use the administrative remedy procedures to address any concerns about staff misconduct (Doc. No. 1-1 at 30) |
| | Step 2 Response (4870-B-13-107) "Your Grievance and Step One response have been reviewed. You ask that outgoing legal mail be picked up by the mailroom staff. You report that your appellate attorney had not received an important letter that you mailed him. Per Prison Policy & Procedure Chapter D.0300, all incoming and outgoing mail must be logged by mailroom staff. Since you did not give specific information about who the letter was addressed to and what date you mailed it, I cannot confirm that the letter was mailed." (Doc. No. 1-1 at 14) |
| 3/16/13 | Letter from Plaintiff to Mr. Whitener: problems that Sgt. Barnette addressed happened again (Doc. No. 1-1 at 39) |
| 3/22/13 | Letter from Plaintiff to Mr. Beddingfield about continued problems with the mailroom (Doc. No. 1-1 at 41) |

| 3/30/13 | <u>Administrative Remedy Procedure</u> "On 1-25-13 I received legal mail through Reg mail and it was opened. The letter was from congress-woman Virginia Foxx from Washington, D.C. I sent a letter to Supt. Whitener with no reply at the same time I sent a Request letter to Sgt. Burnett over the mail room. Sgt. Barnette did send a Reply letter back. Burnett stated that 'unfortunately' I was right and the letter should have never been opened. Also unfortunately mistakes do happen…. This matter is still going on with the mail. Every time I get legal mail, the mail lady is still looking at it. No problem with mail room checking for contraband, but not reading front page mail (legal)…." Requesting that Sgt. Burnett be written up and sent to disciplinary. (Doc. No. 1-1 at 15) |
|---|---|
| 4/17/13 | <u>Step 3 Response</u> (4870-B-13-107) by Inmate Grievance Examiner: review of the grievance reveals no violation of applicable policy or any evidence of disrespect or abuse of authority by staff, grievance is dismissed for lack of supporting evidence (Doc. No. 1-1 at 25) |
| 7/16/15 | <u>Plaintiff Arrives at Avery-Mitchell C.I.</u> |
| 1/11/17 | <u>Step 3 Response</u> (4680-2016-ABC-04365) by Reginald Mewborn: no supporting evidence that staff has violated any applicable policy re allegations of mishandled legal mail, grievance is dismissed (Doc. No. 1-1 at 23) |
| 3/2/17 | <u>Step 3 Response</u> (4680-2017-SCA-00094) by Elizabeth Wallace: staff has adequately addressed the inmate's grievance concerns, facts found by the staff investigator are adopted, grievance is considered resolved (Doc. No. 1-1 at 19) |
| 4/1/17 | <u>Administrative Remedy Procedure</u> (4680-2017-YAC-00197) by Plaintiff: "On February 8th 2017 I was put in segregation from Avery Unit. Officers at the unit (Aery) went through my personal property and took 3 legal pads, 2AA batteries, 2 writing pens and 2 lids off of bowls without filling out a DC-160 and reason for taking these items I bought and paid for out of unit canteen. I have a DC-160 signed by prison officer for the bowls and lids. Avery unit officers are not following state and unit policy when taking inmates property by not filling out the DC-160 continued from first grievance: The officer who handled my property didn't fill out any reason for not giving me my black state prescription eye glasses I had to pay 5.00 through sick call to get. Inmates get wrote up for not following rules and policy so staff should be held accountable when not following policy and rules from state and unit. This is my 2nd grievance turned in on this matter. First one was given to Sgt. Carroll on Avery Unit March 23, 2017." Requested Remedy: "Want items replaced that was taken on 2-8-17. I bought out of Avery-Mitchell canteen. A copy of this has been sent to grievance board." (Doc. No. 1-1 at 11-12) |

| | |
|---|---|
| 4/5/17 | <u>Step-1 Unit Response</u> (4680-2017-YAC-00197) by Mark Geouge: "In response to your grievance that was accepted on 04/06/2017 in reference to your missing personal property, the following has been determined. Officer Edwards reports he was assigned to Avery Unit on 02/08/2017 and he packed, inventoried, and sent your property to restrictive housing. He further reports no items were taken or left unrecorded. A proper dc-160 was completed and all items from your locker were accounted for and recorded." (Doc. No. 1-1 at 13) |
| 4/18/17 | <u>Administrative Remedy Procedure</u> (4650-2017-YAC-00219) by Plaintiff: "I receive the Hickory Daily Record paper. This is paid for by me and my family. Department of Correction has not right to alter or take any part of a newspaper not paid for by D.O.C. This is understanding the paper is part of freedom of press. We may be inmates but we still have constitutional rights and this unit taking part of my paper violation of this right." Requested Remedy: "If mailroom lets it through, no other staff member has a right to hinder or take away mail or papers (news)." (Doc. No. 1-1 at 6) |
| 4/19/17 | <u>Step 3 Response</u> (4680-2017-YAC-00197) by Elizabeth Wallace: staff has adequately addressed inmate's grievance concerns, facts found by staff investigator are adopted, grievance is considered resolved (Doc. No. 1-1 at 24) |
| 4/24/17 | <u>Step 1 Unit Response</u> (4680-2017-YAC-00219) by Mark Geouge: "In response to your grievance that was accepted on 04/19/2017 in reference to a section of your news paper being removed by staff, the following has been determined. Yancey personnel report that they did not remove any section of your news paper. On 04/24/2017 I was able to locate the missing comic section of your news paper and this section was returned to you. I am positive it was not done intentional and an over sight on our behalf." (Doc. No. 1-1 at 1) |
| | <u>Administrative Remedy Procedure</u> (4680-2017-YAC-00922) by Plaintiff: "This is the 2nd grievance in regards to staff taking parts of my newspaper. Staff officer stated Asst. Unit Manager told staff not to let inmates have sales papers or anything other than newspaper…. This is censorship of a public news papers that has no nudity … it is a public newspaper. I and my family pay for the newspaper and everything in it! That includes everything in the paper sent by publisher. D.O.C. cannot censor unless it has nudity or threats to person or place. Follow up from grievance 468-2017-YAC-00219." Requested Remedy: "Stop taking things out of my paper I pay for." (Doc. No. 1-1 at 9) |
| 5/4/17 | <u>Step-1 Unit Response</u> by Mark Geouge: "In response to your grievance that |

was accepted on 04/26/2017 in reference to items missing out of your paper, the following has been determined. Every effort is made to ensure you receive your newspaper and its contents. However sale flyers and coupons are not given and will be extracted from newspapers due to there content and storage issues that arise from them. I also contacted the Hickory Daily Record and they assure me that news paper subscriptions do not pay for these sale flyers and the company to which the flyer pertains covers the cost. They also report the colored comics are only available with the Sunday edition of this paper." (Doc. No. 1-1 at 7)

| | |
|---|---|
| 5/18/17 | Inmate Request Form why is mailroom taking comics out of Plaintiff's newspaper (Doc. No. 1-1 at 47) |

Response "The mailroom doesn't take anything out of the newspapers" (Doc. No. 1-1 at 47)

| | |
|---|---|
| 5/23/17 | Step 3 Response (4680-2017-YAC-00922) by Reginald Mewborn: there is no supporting evidence that staff has violated any applicable policy re allegations of mishandling newspaper, grievance is dismissed (Doc. No. 1-1 at 22) |

| | |
|---|---|
| 6/15/17 | Offense and Disciplinary Report re offenses on 6/12/17; belligerent conduct toward Officer Hicks about allegations that staff tampered with Plaintiff's newspaper; Plaintiff charged with willfully disobeying staff, using disrespectful, profane, lewd or defamatory language to staff; Plaintiff pled guilty (Doc. No. 1-1 at 44) |

| | |
|---|---|
| 6/27/17 | Administrative Remedy Procedure (4680-2017-WBD-02702) by Plaintiff: "This is the 4th grievance I have had to fill out about staff taking items out of my Hickory Daily Record newspaper. I have had to face Retaliation from staff on unit many times cause I let them (staff) know they are breaking D.O.C. Policy (chapter D, section .0300, Part C). My newspapers are not a storage issue. Does not have nudity of any kind, nothing threatening to unit or staff or inmate of any kind. No contraband of any kind. I was told by Asst. Unit Manager R. Geouge in Yancy Unit I can't prove his C.O.s are taking these items out of my papers. But his own 2nd Shift C.O. told me Mr. Geouge told them to take it out of my papers. Same for Avery Unit under policy. If any staff takes anything from an inmate a D.C. 160 has to be filled out. If any mail is taken a censorship appeal form has to be filled out everytime and reason why it violates policy is section d.0310(c)." Requested Remedy: "Stop taking thinks out of my newspaper from a publisher. No rules says you can do this it is censorship of newspaper." (Doc. No. 1-1 at 3-4) |

| | |
|---|---|
| 6/30/17 | DC-410 Screening Response (4680-2017-WBD-02702) by Robin Hudgins: "The grievance you have submitted has been accepted and will begin a review process. A response will be sent within 15 calendar days of 06/30/2017." |

|         |                                                                                                                                                                                                                                                  |
|---------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|         | (Doc. No. 1-1 at 2)                                                                                                                                                                                                                               |
| 7/12/17 | <u>Step 3 Response</u> (4680-2017-WBD-02702) by Jasmine Belyeu: staff adequately addressed inmate's grievance concerns, adopts the facts found by the staff investigator, no further action is warranted, grievance is dismissed (Doc. No. 1-1 at 18) |
| 12/18/18 | <u>Plaintiff is Transferred to Alexander C.I.</u>                                                                                                                                                                                               |

## II.    LEGAL STANDARDS

### (1)    <u>Summary Judgment</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. <u>Id.</u> at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Sylvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 818

(4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (quoting <u>Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

Although the court does not make a credibility determinations on summary judgment review, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Smith v. Ozmint</u>, 578 F.3d 246, 254 (4th Cir. 2009)) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)).

When confronted with cross-motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003).

 **(2)** **Mail**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. <u>See</u> <u>Everson v. Bd. of Educ.</u>, 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974); <u>Pittman v. Hutto</u>, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective

14

of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)). A court assesses the reasonableness of a prison regulation that impinges on a prisoner's constitutional rights by considering: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it, (2) whether there are any alternative means of exercising the right that remain open to inmates, (3) the impact that accommodation of the asserted constitutional right will have on guards, other inmates, and prison resources generally, and (4) whether there are ready alternatives for furthering the governmental interest. Turner v. Safley, 482 U.S. 78, 90-92 (1987).

As a general rule, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband. Wolff v. McDonnell, 418 U.S. 539, 576 (1974). Prison officials may open mail from an attorney addressed to a prisoner only in the presence of the prisoner. Id.

Isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) ("a few isolated instances of plaintiff's [legal] mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct ... were not of constitutional mandate."); Pearson v. Simms, 345 F.Supp. 2d 515, 519 (D. Md. 2003), aff'd, 88 Fed. Appx. 639 (4th Cir. 2004) ("occasional incidents of delay or non-delivery of mail are not actionable under § 1983).

**(3)     Due Process**

15

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172. Moreover, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986).

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

### (4) **Sovereign Immunity**

The Eleventh Amendment bars suits directly against a state or its agencies, unless the state has waived its immunity or Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66

(1989). Congress has not imposed § 1983 liability upon states, and the state of North Carolina has done nothing to waive its immunity. <u>Bright v. McClure</u>, 865 F.2d 623, 626 (4th Cir. 1989) (citing <u>McConnell v. Adams</u>, 829 F.2d 1319, 1328 (4th Cir. 1987)).

"[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Therefore, a lawsuit against an officer in his official capacity is, in substance, a claim against the governmental entity and should be subject to the same analysis. <u>See</u> <u>Almone v. City of Long Beach</u>, 478 F.3d 100, 106 (2d Cir. 2007); <u>see</u> <u>Hutto v. S.C. Retirement Sys.</u>, 773 F.3d 536, 549 (4th Cir. 2014) (State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State).

**(5)      <u>Qualified Immunity</u>**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). The existence of qualified immunity "generally turns on the 'objective reasonableness' of the actions" without regard to the knowledge or subjective intent of the particular official. <u>Am. Civil Libs. Union of Md., Inc. v. Wicomico County, Md.</u>, 999 F.2d 780, 784 (4th Cir. 1993) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639, 641 (1987)) (internal citations omitted).

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence

for resolving government officials' qualified immunity claims by determining whether: (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. While the sequence of the steps set forth in <u>Saucier</u> is "often appropriate," it is not mandatory. <u>Pearson</u>, 555 U.S. at 236. Judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. <u>Id.</u>

To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been "clearly established" at the time of the defendant's alleged misconduct. <u>Thompson v. Commonweath of Va.</u>, 878 F.3d 89, 97 (4th Cir. 2017) (citing <u>Pearson</u>, 555 U.S. at 232). The analysis takes place against the backdrop of two dueling interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson</u>, 555 U.S. at 231.

To find a right is clearly established does not mean that "the exact conduct at issue [must] have been held unlawful for the law governing an officer's actions to be clearly established." <u>Amaechi v. West</u>, 237 F.3d 356, 362 (4th Cir. 2001). Rather, the court's analysis must take into consideration "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." <u>Id.</u> at 362-63 (internal quotation omitted). Ordinarily, the unlawfulness of government conduct must be apparent in light of pre-existing law. <u>White v. Pauly</u>, 137 S.Ct. 548, 442 (2017). However, a "general constitutional rule … may apply with obvious clarity ... even though the very action in question

has not previously been held unlawful. <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (citing <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997)). Therefore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Id.</u> at 741.

### III.    DISCUSSION

**(1)    <u>Plaintiff's Motion for Summary Judgment</u>**

Plaintiff argues that he should be granted summary judgment because "Defendants have failed to respond and comply with Order by honorable Judge Whitney on April 24, 2019 (Doc. No. 48) on Motion to Compel." (Doc. No. 68 at 1). He claims that Defendants failed to respond to motions for admissions, interrogatories, and discovery under Rules 26, 33, 36, and 37 of the Federal Rules of Civil Procedure.

Plaintiff's Motion raises discovery allegations and fails to address the claims at issue. Because Plaintiff failed to fulfill his burden of coming forward with admissible evidence of the material facts entitling him to summary judgment, Defendants were not required to rebut his insufficient showing. <u>See</u> <u>Ray Comm'n, Inc. v. Clear Channel Comm'n, Inc.</u>, 673 F.3d 294, 299 (4th Cir. 2012). Plaintiff's Motion for Summary Judgment will, therefore, be denied.

**(2)    <u>Defendants' Motion for Summary Judgment</u>**

**(A)    <u>Legal Mail</u>**

Defendants have presented evidence demonstrating that legal mail is opened in the inmate's presence to check for contraband in the interests of institutional safety and security. Plaintiff made two allegations that legal mail was mishandled in 2013 before he arrived at Avery-Mitchell C.I. His allegations were investigated, it was determined that an error occurred on one of the occasions and that Plaintiff provided inadequate information to investigate the second, and a sergeant addressed the staff who made the error. Two alleged errors with regards to legal mail

during the four-year period at issue can be characterized as isolated and Plaintiff fails to allege these incidents resulted from anything more than negligence. See Buie, 717 F.2d at 926. Further, these incidents allegedly occurred before Plaintiff was transferred to the Avery-Mitchell C.I. The superintendent of that institution, Carlos Hernandez, therefore cannot be held liable because he had no personal involvement in this incident.[3] King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). The other Defendants are supervisors and Plaintiff has failed to allege that they were either personally involved in these incidents or created customs and policies that violated his constitutional rights. Id.; see Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978).

Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact with regards to the alleged mishandling of his legal mail, and therefore, Defendants' Motion for Summary Judgment on this claim will be granted.

**(B)** **Newspapers**

Defendants have presented evidence that a portion of Plaintiff's newspaper was unintentionally omitted on one occasion, and that the missing section was located and promptly returned to Plaintiff. Flyers that are inserted into newspapers and that are not placed there by the publisher are removed pursuant to NCDPS policy in the interests of institutional safety and security. Plaintiff does not attempt to refute any of the foregoing. Nor does he explain why any of the Defendants violated his rights through their own actions or as supervisors. King, 825 F.3d at 206; Monell, 436 U.S. at 658.

Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact with

---

[3] It also appears that these incidents occurred before the time period that Plaintiff specifies in the Amended Complaint.

regards to the allegations that Defendants tampered with his newspapers, and therefore, Defendants' Motion for Summary Judgment will be granted on this claim.

**(C)**     <u>**Due Process**</u>

Defendants have demonstrated that the removal of the flyers from Plaintiff's newspapers pursuant to NCDPS and Avery-Mitchell policy were done in the interests of institutional safety and security, and that the flyers are not included by the newspaper's publisher such that their removal does not implicate Plaintiff's interests in the newspapers that he purchased. Plaintiff does not refute this evidence and has failed to create a genuine dispute of material fact with regards to a due process violation. Therefore, Defendants' Motion for Summary Judgment will be granted on this claim.

**(E)**     <u>**Sovereign Immunity**</u>

Plaintiff seeks damages against Defendants in their official capacities, however, this is barred by sovereign immunity. <u>See</u> <u>Almone</u>, 478 F.3d at 106; <u>Hutto</u>, 773 F.3d at 549. Therefore, Defendants' Motion for Summary Judgment is also granted on that basis.

**(F)**     <u>**Qualified Immunity**</u>

Defendants argues that qualified immunity shields them from damages in their individual capacities because Plaintiff has not established a constitutional violation or shown that they acted intentionally.

Plaintiff has failed to demonstrate that Defendants violated any of his constitutional rights or that their actions were unreasonable in light of clearly established federal law. In particular, Plaintiff fails to refute Defendants' assertions that the NCDPS and Avery-Mitchell policies at issue were enacted for the purposes of ensuring institutional safety and security and that Avery-Mitchell staff implemented those policies to the best of their ability. Defendants are therefore entitled to

qualified immunity.

## IV.     CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is granted, Plaintiff's

Motion for Summary Judgment is denied, and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1.  Defendants' Motion for Summary Judgment, (Doc. No. 60), is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment, (Doc. No. 68), is **DENIED.**

3.  The Clerk of Court is instructed to close this case.

Signed: September 18, 2019

Frank D. Whitney
Chief United States District Judge